## MAX FREUND, ALEXANDER C. KELLER AND ADOLPHUS GOLDSMITH, APPELLANTS, v. THE IMPORTERS AND TRADERS' NATIONAL BANK, RESPONDENT.

*Check — certification of — liability of bank for — power of drawer to stop payment of.*

December 1, 1869, the plaintiffs drew their check for $738.88 upon the defendant to the order and for the accommodation of M. Oppenheimer & Sons, who on the same day delivered it unindorsed to N. Blun & Sons, to whom they were then indebted for goods sold, on account of which they had given them a check on an Ohio bank for $938.88, notice of presentment and non-payment of which was on that day received by N. Blun & Sons. N. Blun & Sons on the same day procured plaintiff's check to be certified by the defendant. They applied this check on the Ohio check, and succeeded in recovering all the goods sold by them except a portion thereof of the value of $425, which they omitted to claim upon the faith of plaintiff's check.

After the check had been certified, the plaintiff notified defendant not to pay it, notwithstanding which the defendant, after taking a bond of indemnity from N. Blun & Sons, did pay it to them out of plaintiff's deposit, upon their indorsing it in the name of the payees. In this action by the plaintiff to recover the amount so paid, *held*, that the defendant having certified the check, was, under the circumstances, bound to pay it. That title to the check could be legally transferred by its mere delivery, especially when that was made for a valuable consideration.

APPEAL from judgment recovered on the dismissal of plaintiff's complaint at the Circuit.

*D. T. Walden*, for the appellants. The check was not indorsed by the payees. It was indorsed in the name of the payees by N. Blun, and there is no evidence of authority on his part to indorse it. It is well settled that the transferee of an unindorsed check has no right to sign the name of the transferer as indorser upon the same. (Byles on Bills, 150; *Harlop* v. *Fisher*, 10 Com. B. [N. S.], 196, 202, 203.) The obligation of the bank not being absolute, but limited, it had no right to pay the check against the notice of plaintiffs, unless the holder had rights superior to the plaintiffs, and which could not be controlled by them. (*Lant* v. *Bk. of N. America*, 49 Barb., 221; *Ætna Nat. Bk.* v. *Fourth Nat. Bk.*, 46 N. Y., 82–88.) A bank may, as a general rule, on certifying a check, charge it to the account of the drawer. It cannot do so if it pays after notice from the drawer not to pay, unless the obligation under the certificate is such as to make it liable to the holder, independent of the relation of the drawer; that is, unless the holder has acquired rights which he can enforce against the bank, although the drawer be not liable upon the check. (*Schneider* v. *Irving Bk.*, 1 Daly, 500; S. C., 30 How. Pr., 190; *Stevens* v. *Com. Ex. Bk.*, 10 N. Y. S. C. R. [3 Hun], 147; *Kelly* v. *Roberts*, 40 N. Y., 432; *Nassau Bk.* v. *Broadway Bk.*, 54 Barb., 236, 240.) They were not indorsees. They were, at most, transferees. The transferee stands in the place of his transferer, subject to all the equities existing against him. (Edwards on Bills, 286, 287; *Chamberlain* v. *Gorham*, 20 Johns., 144; *Hedges* v. *Seeley*, 9 Barb., 214; *Gilbert* v. *Sharpe*, 2 Lans., 412; *Miller* v. *Pardon*, 55 N. Y., 325, 332, 333; *Bush* v. *Lathrop* 22 id., 535.)

*A. R. Dyet* and *R. W. Townsend*, for the respondent. The evidence in this case showed that the check in question was given by the plaintiffs to the payees as a loan for their accommodation, and there was no proof of any fraud in the obtaining of it. Conceding, then, that N. Blun & Son took it for a past indebtedness, it is too well settled to permit discussion that they were entitled to recover upon it, though they knew the consideration of the check. (*Cole* v. *Saulspaugh*, 48 Barb., 104; *East River Bk.* v. *Butterworth*, 45 Barb., 476; *Grocers' Bk.* v. *Penfield*, 7 Hun, 279; *Schiffer* v. *Carpenter*, 51 N. Y., 602.) The certification of the check alone was, as between the plaintiffs and defendant, an appropriation of so

much of the former's funds to its payment and a payment of the check. (*Cooke* v. *State Nat. Bk.*, 52 N. Y., 114, 115.) And the defendants were absolutely liable to pay the check and estopped from disputing its validity, and could not escape from that liability. (15 Wend., 640; 25 id., 411; 29 N. Y., 569, 570.)

Daniels, J. :

The plaintiffs had a deposit account with the defendant, and on the 1st of December, 1869, drew their check upon it payable to M. Oppenheimer & Sons, or order, for the sum of $738.88, and delivered it to the payees as a loan. On the same day the payees transferred it by delivery and without indorsement, to N. Blun & Sons, to whom they were indebted for goods sold, and Blun & Sons procured it to be certified by the proper officer of the defendant on that day. Blun & Sons had previously received, on the sale of their goods to the payees, a check for $938.88, on a bank in Massilon, Ohio. That was protested for non-payment on presentment, and notice thereof was received by Blun & Sons on the day when they received the plaintiffs' check. The amount of the latter they then credited by indorsement upon the Massilon check. They also recovered the larger portion of the goods they had sold to Oppenheimer & Sons. But they omitted to reclaim others amounting to the sum of $425 in value, upon the credit and faith of the plaintiffs' check, which they had then received. It has been claimed that those goods might have been recovered, if diligence in the effort to do so had been observed after they knew that the plaintiffs had prohibited the defendant from paying the check. But the evidence in the case is not sufficient to justify that conclusion. It was after the rights of the parties had become fixed by the transfer of the check to Blun & Sons, its certification by the defendant, the indorsement of the amount of it upon the dishonored Massilon check, that the plaintiffs prohibited payment; and that the evidence showed, became known for the first time to Blun & Sons a day too late to enable them to recover the goods in price amounting to the sum of $425. The defendant, after that, paid the check to Blun & Sons, having first received from them a bond of indemnity. And the plaintiffs, after reducing their deposit account to the amount of the check brought this action to recover the balance.

The case differs very materially in the facts proven from the condition in which it was presented when it was previously before this court. (*Freund* v. *Importers and Traders' Bk.*, 10 N. Y. Sup. Ct. Rep., 689.) It now appears, but did not at that time, that the defendant had actually delivered its certificate upon the check to Blun & Sons, who had received it for a good consideration, which, to the extent of $425, they abstained from efforts to recover, upon its credit, before they, or the defendant, were forbidden to collect, or pay the amount of it. ' And those facts are sufficient to materially change the legal aspect of the case. There can be no room for doubt, as the plaintiffs' counsel has claimed, that the check of itself would not have deprived them of the right to recover the amount from the defendant. That results from the fact that it would not transfer to the payee any portion of the drawer's deposit account, and consequently could impose no legal obligation upon the bank to pay it. (*Nassau Bank* v. *Broadway Bank*, 54 Barb., 236; *Lunt* v *Bk. of North America*, 49 id., 221; *Ætna National Bk.* v. *Fourth National Bank*, 46 N. Y., 82; *Schneider* v. *Irving Bk.* 30 How. Pr. Rep., 191.) But, after a check of the depositor has been in good faith certified by the bank upon which it has been drawn, a very different case is presented. Then the circumstances on which the depositor's right to recover have been placed when nothing but his own unaccepted check appeared in the way, no longer exist; for by the certificate the bank becomes liable directly ' to the holder of the check, and bound to retain and hold so much of the drawer's funds for him as will be required to meet and pay it. (*Meads* v. *Merchants' Bk. of Albany*, 25 N. Y., 143; *Cooke* v. *National Bk. of Boston*, 52 id , 97; *First Nat. Bk. of Jersey City* v. *Leach*, id., 350; *Marine Nat. Bk.* v. *Nat. City Bk.*, 59 id., 67.) A new contract concerning so much of the plaintiffs' funds was created in this case, by which, with their authority and under their direction, the defendant became bound to pay the holder of the check, who had received it for a good consideration, the sum of money in dispute. And that was not in a condition to be revoked or rescinded by the mere act of the plaintiffs, when they directed the defendant not to pay. The case, in this respect, was materially different from that of *Kelly* v. *Roberts* (40 N. Y., 432), where there had been no assent to, or acceptance of the arrangement made by

the third party.   Here the transaction had produced an entire change in the relations of the defendant.   For it had resulted in the creation of an obligation directly to the holders of the check, which they were entitled to insist upon being observed by the defendant. The check was drawn and loaned by the plaintiffs, to be used by the payees, in any mode which might subserve their interests.   It was an unrestrained and unqualified loan.   And the persons receiving it had the right to use it in any form which might be beneficial to themselves.   (*East River Bk.* v. *Butterworth*, 45 Barb., 476; *Cole* v. *Saul-paugh*, 48 id., 104; *Grocers' Bk.* v. *Penfield*, 14 N. Y. Sup. Ct. Rep., 279; *Schepp* v. *Carpenter*, 51 N. Y., 602.)   And it was so used by them by the transfer they made of it to Blun & Sons, for a good consideration, before the payee's authority to dispose of it had been in the least impaired by any action taken by the plaintiffs.   The fact that the payees did not indorse the check, will not change the legal effect of the transaction.   For, as a chose in action, title to it could be legally created by its mere delivery, especially when that was made for a valid consideration, actually received by the persons transferring it.   After what had transpired under the authority of the plaintiffs they were not in a condition to recover the amount claimed by them from the defendant.   And the circumstance that a bond of indemnity was taken, before it made the payment, can afford them no assistance.   For the effect of that was only to bind the persons receiving the money to return it, in case it did not lawfully belong to them.   Under the circumstances they were entitled to the money which was paid to them on the plaintiffs' account, and no right to recover it on the bond existed.

The judgment was right and it should be affirmed.

Davis, P. J., and Brady, J., concurred.

Judgment affirmed.