## BANK OF RUTLAND vs. BUCK, impleaded with Spear and Everest.

A *surety* to a note made for the purpose of being discounted at a bank for the accommodation of the principals, passed off by them as collateral security for the payment of a judgment, is liable to the payment of the note.

THIS cause came before the court on a case made by consent. The action was on a promissory note for $1200, dated in June, 1826, made by the defendants, and payable to the president, directors and company of the bank of Rutland ninety days after date. The note was made to enable Spear and Everest to raise money for their own accommodation ; it was signed by Buck as *surety*, and delivered by him to Spear and Everest. It was offered for discount at the Bank of Rutland, which bank declined to discount it, and subsequently and prior to its becoming due, it was delivered over by Spear and Everest to E. House and two others, as collateral security for the payment of a judgment in their favor against Spear and Everest for an amount exceeding $1200. The judgment having become due, this suit was commenced in the name and by the authority of the payees for the benefit of House and his associates. At the time of

the commencement of this suit the judgment was and still is unpaid. The existence of the plaintiffs as a body corporate was admitted.

*J. L. Viele,* for plaintiffs. A promissory note without words of negotiability may, in an action by the payee against the maker, be declared on as a note within the statute. 3 *Caines,* 137. An action may be maintained in the name of a trustee for the benefit of the equitable owner. 6 *T. R.* 123. 11 *Johns. R.* 52. To give effect to the note, a delivery need not be shewn ; if there be an actual signing it is enough. 5 *East,* 477. 2 *Cowen,* 536. The note had its inception from the time of its delivery to House and his associates, 20 *Johns. R.* 288 ; 5 *Taunt.* 529 ; and being a note within the statute, is governed by the principles applicable to commercial paper. A disposition being made of the note different from what was originally contemplated does not affect its validity ; the liability of the surety was not changed thereby from what it would have been had the note been regularly discounted by the payees. 4 *Cowen,* 567.

*J. L. Wendell,* for defendant. The object for which the note was made having failed, it ought to have been returned to the *surety ;* so it was held in *Deniston* v. *Bacon,* 10 *Johns. R.* 198, where a note made to be discounted at a bank, and not discounted, was held void and the payee not entitled to recover against the maker, although when discounted half of the proceeds were to go in payment of a debt due the payee. In *Woodhull* v. *Holmes,* 10 *Johns. R.* 231, the fact of a note being fraudulently put into circulation instead of being offered at a bank for discount according to its design was held to be a good defence. In *Skelding* v. *Warren,* 15 *Johns. R.* 270, a note endorsed for the accommodation of the makers to enable them to carry on their business, was considered *functus officii* by the insolvency of the makers, and a transfer of it after the insolvency void. Had the note in this case been negotiated to House and his associates and the money advanced by them according to the cases of *Powell* v. *Waters,* 17 *Johns. R.* 176, and *Bank of Chenango* v. *Hyde,* 4 *Cowen,* 567, the surety could not have objected ; for whether the

note was discounted by the bank or by individuals was immaterial to him: in either case the persons intended to be benefitted would have been enabled to prosecute their business by means of the funds obtained. Such it is fairly to be presumed was the object of making the note, and not that it should be pledged in payment of an antecedent debt, and a debt too for which a judgment was already obtained against the principals; the object of the note was to raise money for their accommodation, or in other words to carry on business, and not to pay a judgment: had the money been raised on it, the principals would have been in funds to the amount of the note; by pledging it for the payment of a debt, their means were not bettered and the loss of the surety became almost a matter of certainty. To become the endorser of a note to be discounted at a bank, is assuming a very different responsibility from becoming security for the payment of a judgment.

The note not having been discounted by House and his associates, but received as collateral security for the payment of a judgment, is not to be governed by the law merchant. It was received not in the ordinary course of commercial business, but in fraud of the object for which it was made. It had in fact no legal existence as against the surety, until discounted by the payees or some one else. It was transferred by Spear and Everest without authority, and received by House and his associates without paying any consideration therefor. They acquired no better title to it than Spear and Everest had, and, as in their hands, it was a nullity against the surety.

*Viele*, in reply. Had the note been discounted by the payees, and the money applied towards payment of the judgment held by House and his associates, the surety could not on that account have objected to his liability.

*By the Court*, SAVAGE, Ch. J. I can see no well founded objection to a recovery upon this note. It was drawn for the purpose of raising money for the accommodation of the two makers, Spear and Everest, who have had the benefit of it. Had House & Co. advanced money on it to those two mak-

ers, the case would be precisely within the case of *Powell* v. *Waters,* 17 *Johns. R.* 176. It was immaterial to the surety who advanced the money, provided Spear and Everest had the benefit of it. It did not alter his responsibility ; nor was there any fraud in House & Co. taking the note for a debt due to them. It passed to the credit of Spear and Everest.

In the case of *Woodhull* v. *Holmes,* 10 *Johns. R.* 231, the court decided upon the fact of fraud in putting the note in circulation, because the maker intended to borrow money upon it for his own use. In *Skelding* v. *Haight,* 15 *Johns. R.* 274, a fraud was committed, to which the plaintiffs were privy, in putting the note in circulation after the makers had failed.

Here, had the plaintiffs obtained a discount at the bank, they might have paid the money to House & Co. and Buck's liability would have been the same ; his situation is not changed, nor is there any fraud.

The case of *Marvin* v. *McCullum,* 20 *Johns. R.* 288, and *Chenango Bank* v. *Hyde,* 4 *Cowen,* 567, are authorities shewing the right of the plaintiffs to recover.

Judgment for plaintiffs.